UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Zane Gray** : | |
| **7609 Quinn Spring Court** : | |
| **Adelphi, MD 20783** : | |
| : | |
| Plaintiff , : | |
| : | |
| v. : | Civil Action No. |
| : | |
| **Universal Service Administrative Company** : | |
| **2000 L Street, NW, Suite 200** : | 1:07CV00996 (RBW) |
| **Washington, DC 20036** : | |
| : | |
| Defendant. : | September 7, 2007 |
| : | |

### FIRST AMENDED COMPLAINT

### JURISDICTION

1. The plaintiff brings this action for discriminating against her by terminating her employment because of her race and ancestry in violation of The Civil Rights Act of 1866 as amended, 42 U.S.C. §1981.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1343(a)(3).

3. Venue in this district is appropriate pursuant to 28 U.S.C. §1391 because the acts of discrimination occurred in this judicial district and the defendant employed the plaintiff in this district.

### PARTIES

4. The plaintiff, Zane Gray, resides in Adelphi, Maryland and was at all times relevant herein an employee of the defendant.

5. Defendant, Universal Service Administrative Company, is a not-for-profit business

1

operating in the District of Columbia and offers affordable telecommunications services to the public.

**STATEMENT OF THE CLAIM FOR DISCRIMINATION AGAINST THE PLAINTIFF IN VIOLATION OF 42 U.S.C. §1981**

6. The plaintiff is a 43 year old black female who has the ethnic characteristics of someone who was born and raised in Jamaica. She has a BS degree in Accounting from the University of Maryland (1989). She was hired by defendant in June 2004 as a Senior Level Accountant.

7. The plaintiff successfully completed her probationary period and received a favorable performance evaluation in January 2005 and was given a pay increase.

8. Since June 2005, the plaintiff reported to Mike Wamganz (Caucasian male), who held the position of Accounting Manager. Before that she was hired and supervised by James Rodda, a Caucasian male.

9. Mr. Wamganz was out sick during much of September 2005, and although the accounting staff did what they could to cover for his absence, the accounting work was behind for the department. One Friday in October, the plaintiff stayed late to complete reconciliation of a financial statement that was overdue to be filed (through no fault of the plaintiff). Although her normal working time was till 6 pm, she finished the financial statement at 8:30, informed Mr. Wamganz that it was ready for him to review, and then she went home for the evening.

10. Later that same evening, Mr. Wamganz sent her an email expressing his annoyance that she left work for the evening without getting his express approval. The plaintiff did not receive this email until Monday morning when she returned to work. She responded that

she needed to get home because of how late it was and that she had two young children waiting for her at home.

11. On Thursday of that same week, Mr. Wamganz scheduled a meeting with the plaintiff and the Human Resource Manager, Irena Munoz (Russian born female), which was held in the conference room. Mr. Wamganz presented the plaintiff with a written warning for allegedly leaving work early on several occasions. Most of these were occasions where the plaintiff had requested to leave work early to pick up her children from day care. However, as the plaintiff explained during the meeting, although she requested authorization to leave early on those dates, she only left early on two of the dates in question and was able to make alternative arrangements for the other days. The meeting ended with Mr. Wamganz asserting that they would meet again the next day to resolve how they could work together in the future and avoid early departures, regardless of how compelling the reason.

12. Before the next day's meeting, the plaintiff learned that Defendant's HR Director, Paula Dinwidde, was going to be attending the meeting. The plaintiff was concerned that she would feel intimidated. The plaintiff asked the defendant's attorney for employment, Scott Brash, as to whether she could bring a coworker witness to the meeting. Brash indicated that she could.

13. However, the plaintiff was later told by HR Director Dinwidde that she would not be allowed to bring a coworker to the meeting. As the plaintiff attempted to explain to Ms. Dinwidde that she had received approval from the defendant's general counsel to bring a witness, Ms. Dinwidde became very angry with her, told her that she was an employee at will and that she could be terminated at any time and she was now being terminated. Ms.

    Dinwidde ordered the plaintiff to step away from her computer. Dinwidde also instructed Ms. Munoz to box up the plaintiff's personal belongings and to escort the plaintiff out of the building.

14. The plaintiff had done nothing more than express her desire to have a representative present at the meeting with her and to remind the HR Director that she had checked with the general counsel and was told she could have a representative. Defendant's termination of the plaintiff for seeking to have assistance during the meeting treated the plaintiff less favorably than other employees who were not black and who did not have the ethnic characteristics of someone from Jamaica. These employees were given progressive notice of violations of the defendant's policies before being terminated. The plaintiff was terminated without notice and even though she had not violated any of the defendant's policies.

15. The plaintiff suffered tremendously from being terminated so peremptorily. She became anxious about her family and how she would be able to keep up with her financial obligations. She sought treatment from her physician regarding the increased stress caused by her termination and had symptoms of sleeplessness and pain. She also lost self esteem from the way she was treated.

16. In violation of 42 U.S.C. §1981, the defendant discriminated against the plaintiff by terminating her employment because of her race and ancestry without any business justification. The plaintiff had not violated any employer policies and was a good employee. She was treated less favorably than other employees who were not black and who did not have the ethnic characteristics of someone from Jamaica, and who are given progressive notice of violations before being terminated. The defendant also has offered

shifting and pretextual reasons for the plaintiff's termination in order to conceal their true discriminatory intent.

17. As a result of the defendant's discrimination, the plaintiff has suffered damages in the form of lost benefits and other attendant rights and privileges of his employment. She has also suffered anxiety, sleeplessness, humiliation, loss of self-esteem and enjoyment of life.

18. The defendants' actions were taken with malice and/or in reckless indifference of the plaintiff's federal rights.

**REQUEST FOR RELIEF**

The plaintiff respectfully requests the Court to order the following relief:

    1. Direct Defendant to reinstate the plaintiff and make her whole for all her losses of wages and benefits, with pre- and post-judgment interest;

    2. Direct Defendant to compensate the plaintiff for the anxiety, sleeplessness, humiliation, loss of self-esteem and enjoyment of life she suffered from being discriminated against;

    3. Direct Defendant to compensate the plaintiff for punitive damages because of its malice and/or reckless indifference to the plaintiff's federal rights;

    4. Direct that Defendant pay the plaintiff reasonable attorneys fees and costs for the plaintiff having to secure representation to secure her rights to be free of discrimination under 42 U.S.C. §1981;

    5. Direct such other relief, including, but not limited to, front pay as may be necessary to restore the plaintiff to the position that she would have been in had Defendant not discriminated against her because her race or ancestry.

**DEMAND FOR JURY TRIAL**

The plaintiff demands a trial by jury with respect to all issues to which she is entitled under law.

Respectfully submitted,
FOR THE PLAINTIFF


/s/James L. Kestell_____
James L. Kestell  DC #955310
KESTELL & ASSOCIATES
209 Midvale Street
Falls Church, VA 22046
(202) 237-2912
(202) 237-4321
Email jlkestell@cox.net

/s/ Jonathan L. Gould_____
Jonathan L. Gould
DC Bar #491052
Kestell and Associates
1012 14th Street, NW, Suite 630
Washington, DC 20005
Tel. 202-347-3889
Fax 202-347-4482
Email: jgould@igc.org

Attorneys for the Plaintiff