# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **Zane Gray** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **Civil Action No.** |
| | : |
| **Universal Service Administrative Company** | : |
| | : **1:07CV00996 (RBW)** |
| | : |
| **Defendant.** | : **September 19, 2007** |
| | : |

_____

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT AND STATEMENT OF MATERIAL FACTS IN DISPUTE

The plaintiff, Zane Gray (hereafter called the plaintiff of Ms. Gray) hereby opposes the defendant's motion to dismiss and/or for summary judgment. Pursuant to Rule 56.1 of the Local Rules of Civil Procedure, the plaintiff also submits her statement of facts that are either in dispute, or if not in dispute, are grounds upon which the Court should deny the motion:

1. Ms. Gray is black female who has the ethnic characteristics of someone who was born and raised in Jamaica. (Amended Complaint, ¶6; Gray Declaration, ¶2).

2. She has a BS degree in Accounting from the University of Maryland. (Amended Complaint, ¶6; Gray Declaration, ¶3).

3. She was hired by defendant in June 2004 as a Senior Level Accountant. (Amended Complaint, ¶6; Gray Declaration, ¶4).

4.  She successfully completed her probationary period and received a favorable performance evaluation in January 2005 and was given a pay increase. (Amended Complaint, ¶7; Gray Declaration, ¶6).

5.  After June 2005, she reported to Mike Wamganz, a white male who held the position of Accounting Manager. (Amended Complaint, ¶8; Gray Declaration, ¶7).

6.  Before that she was hired and supervised by James Rodda, another white male. (Amended Complaint, ¶8; Gray Declaration, ¶5).

7.  Mr. Wamganz was out sick during much of September 2005. Consequently, the defendant's accounting work was behind. (Amended Complaint, ¶9; Gray Declaration, ¶8).

8.  One Friday in October, Ms. Gray stayed late to complete reconciliation of an overdue financial statement. (Amended Complaint, ¶9; Gray Declaration, ¶2). Although her normal working time was till 6 pm, she finished the financial statement at 8:30. (Amended Complaint, ¶9; Gray Declaration, ¶9).

9.  She informed Mr. Wamganz that it was ready for him to review and then went home for the evening. (Amended Complaint, ¶9; Gray Declaration, ¶9).

10. Later that evening, Mr. Wamganz sent her an email expressing his annoyance that she left work without getting his express approval. (Amended Complaint, ¶10; Gray Declaration, ¶10).

11. Ms. Gray did not see the email until Monday morning when she returned to work. (Amended Complaint, ¶10; Gray Declaration, ¶10).

12. She then told Wamganz that she needed to get home because she had two young children waiting for her at home.  (Amended Complaint, ¶10; Gray Declaration, ¶10).

13. On Thursday of that same week, Wamganz scheduled a meeting with Ms. Gray and the Human Resource Manager, Irena Munoz (Russian born female).  (Amended Complaint, ¶11; Gray Declaration, ¶11).

14.  At the meeting Mr. Wamganz presented Ms. Gray with a written warning for allegedly leaving work early on several occasions.  (Amended Complaint, ¶11; Gray Declaration, ¶11).   Ms. Gray explained that she had left early on only two days and that both times she needed to pick up her children from day care.  (Amended Complaint, ¶11; Gray Declaration, ¶12).

15.  The meeting ended with Mr. Wamganz asserting that they would meet again the next day to resolve this dispute.  (Amended Complaint, ¶11; Gray Declaration, ¶13).

16.  Before the next day's meeting, Ms. Gray discovered that the defendant's HR Director, Paula Dinwiddie, was going to be attending.  (Amended Complaint, ¶12; Gray Declaration, ¶14).   Ms. Gray was concerned that she would feel intimidated. (Amended Complaint, ¶14; Gray Declaration, ¶14).

17. Therefore, she asked the defendant's employment counsel, Scott Brash, if she could bring a co-worker to the meeting as a witness. Brash indicated that she could. (Amended Complaint, ¶12; Gray Declaration, ¶15).

18.  However, when Dinwiddie found out about Ms. Gray's intentions, Dinwiddie told her that she could not bring the co-worker.   (Amended Complaint, ¶13; Gray Declaration, ¶16).

19.  While Ms. Gray was attempting to explain to Ms. Dinwiddie that she had received approval from counsel to bring the co-worker, Dinwiddie became very angry and fired her.   (Amended Complaint, ¶13; Gray Declaration, ¶16).

20.  Prior to the firing, Ms. Gray was meeting the defendant's reasonable expectations in performing her job. (Amended Complaint, ¶6-13; Gray Declaration, ¶6-16).

21.  Ms. Gray was fired for seeking the assistance of a co-worker during a disciplinary meeting. Based on the fact that Brash allowed Ms. Gray to bring a witness to the meeting, the defendant had a practice of allowing its employees to have co-employees accompany them to disciplinary meetings. (Amended Complaint, ¶13; Gray Declaration, ¶17).

22.  Since that is the case, other employees who were not black or of Jamaican ancestry were allowed to have witnesses at disciplinary meetings and were not fired for making such a request.  (Amended Complaint, ¶13; Gray Declaration, ¶17-18).

23.  The defendant's personnel policies followed progressive discipline before firing employees, including with white and/or non Jamaican employees.  (Amended Complaint, ¶13; Gray Declaration, ¶19; Ex. 2).

24.  The defendant did not follow that policy in firing Ms. Gray.  (Amended Complaint, ¶13; Gray Declaration, ¶19-20).

25.  The defendant treated Ms. Gray less favorably than other employees who were not black and who did not have the ethnic characteristics of someone from Jamaica.  (Amended Complaint, ¶14; Gray Declaration, ¶16-20).

26.  These employees were given progressive notice of violations of the defendant's policies before being terminated.  (Amended Complaint, ¶14; Gray Declaration, ¶19; Ex. 2).

27.  In contrast, the defendant fired Ms. Gray without notice and even though she had not violated any of the defendant's policies.  (Amended Complaint, ¶14; Gray Declaration, ¶16-20).

28.  The defendant discriminated against Ms. Gray because of her race. (Amended Complaint, ¶1-16; Gray Declaration, ¶1-20).

29.  The defendant discriminated against Ms. Gray because of the ethnic characteristics associated with her Jamaican ancestry. (Amended Complaint, ¶1-16; Gray Declaration, ¶1-20).

Respectfully submitted,

FOR THE PLAINTIFF

/s/James L. Kestell_____
James L. Kestell  DC #955310
KESTELL & ASSOCIATES
209 Midvale Street
Falls Church, VA 22046
(202) 237-2912
(202) 237-4321
Email jlkestell@cox.net

/s/ Jonathan L. Gould_____
Jonathan L. Gould
DC Bar #491052
Kestell and Associates
1012 14th Street, NW, Suite 630
Washington, DC 20005
Tel. 202-347-3889
Fax 202-347-4482
Email: jgould@igc.org

Attorneys for the Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | | |
|---|---|---|
| **Zane Gray** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | |
| **Universal Service Administrative Company** | : | |
| | : | **1:07CV00996 (RBW)** |
| | : | |
| **Defendant.** | : | **September 19, 2007** |
| | : | |

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

### INTRODUCTION

This is a case of discrimination filed by the plaintiff, Zane Gray, (hereafter Ms. Gray) against her former employer, the defendant, Universal Service Administrative Company. Ms. Gray is a black woman with ethnic characteristics associated with the fact that she was born in Jamaica.

The amended complaint alleges that the defendant fired Ms. Gray because of her race and ancestry in violation of 42 U.S.C. §1981. Before filing a responsive pleading to the complaint, the defendant filed a motion to dismiss and/or for summary judgment under Rules 12(b)(1) and (6) and 56 of the Federal Rules of Civil Procedure claiming that the allegations in the complaint were so deficient that the plaintiff did not even establish a prima facie case of discrimination. This memorandum explains why the Court should deny the motion, or, at minimum, postpone its decision until the end of discovery.

As a black Jamaican woman who, before her firing, was meeting the defendant's expectations, Ms. Gray has clearly set forth a prima facie case of discrimination under

§1981.  The defendant's claims that she has to identify a white replacement or similarly situated persons who were treated differently to establish such a case are contrary to law.

Moreover, the defendant fired Ms. Gray for doing nothing more than expressing her desire to have an employee representative accompany her to a disciplinary meeting— a request that already had been approved by defendant's counsel.  Firing Ms. Gray for this reason was so excessively irrational, that it raises strong inferences that the defendant was motivated by discriminatory animus.

Not only was the firing contrary to the defendant's policies of allowing such representatives at these interviews, it was contrary to the defendant's practice of engaging in progressive discipline.  Even though Ms. Gray is not required by law to do so, she has also alleged facts to prove that, by firing her for the reasons given, the defendant treated her less favorably than other employees who were not black and who did not have Jamaican ethnic characteristics.  Accepting these facts as true and construing all inferences in a light most favorable to the plaintiff, as the Court must in deciding the motion, and the totality of these allegations are more than sufficient to prove claims of race and ancestry discrimination under §1981.

**FACTS**

As set forth in the amended complaint and her sworn declaration, Ms. Gray's case consists of the following allegations. Ms. Gray is black female who has the ethnic characteristics of someone who was born and raised in Jamaica.  (Amended Complaint, ¶6; Gray Declaration, ¶2).  She has a BS degree in Accounting from the University of Maryland.  (Amended Complaint, ¶6; Gray Declaration, ¶3). She was hired by defendant

in June 2004 as a Senior Level Accountant.  (Amended Complaint, ¶6; Gray Declaration, ¶4).

She successfully completed her probationary period and received a favorable performance evaluation in January 2005 and was given a pay increase.  (Amended Complaint, ¶7; Gray Declaration, ¶6).  After June 2005, she reported to Mike Wamganz, a white male who held the position of Accounting Manager.  (Amended Complaint, ¶8; Gray Declaration, ¶7).  Before that she was hired and supervised by James Rodda, another white male. (Amended Complaint, ¶8; Gray Declaration, ¶5).

Mr. Wamganz was out sick during much of September 2005. Consequently, the defendant's accounting work was behind.  (Amended Complaint, ¶9; Gray Declaration, ¶82).  One Friday in October, Ms. Gray stayed late to complete the reconciliation of an overdue financial statement.  (Amended Complaint, ¶9; Gray Declaration, ¶2).  Although her normal working time was till 6 pm, she finished the financial statement at 8:30. (Amended Complaint, ¶9; Gray Declaration, ¶2)  She informed Mr. Wamganz that it was ready for him to review and then went home for the evening.  (Amended Complaint, ¶9; Gray Declaration, ¶9).

Later that evening, Mr. Wamganz sent her an email expressing his annoyance that she left work without getting his express approval. (Amended Complaint, ¶10; Gray Declaration, ¶10).  Ms. Gray did not see the email until Monday morning when she returned to work.  (Amended Complaint, ¶10; Gray Declaration, ¶10).  She then told Wamganz that she needed to get home because she had two young children waiting for her.  (Amended Complaint, ¶10; Gray Declaration, ¶10).

3

On Thursday of that same week, Wamganz scheduled a meeting with Ms. Gray and the Human Resource Manager, Irena Munoz (Russian born female). (Amended Complaint, ¶11; Gray Declaration, ¶11). At the meeting Mr. Wamganz presented Ms. Gray with a written warning for allegedly leaving work early on several occasions. (Amended Complaint, ¶11; Gray Declaration, ¶11). Ms. Gray explained that she had left early on only two days and that both times she needed to pick up her children from day care. (Amended Complaint, ¶11; Gray Declaration, ¶12). The meeting ended with Mr. Wamganz asserting that they would meet again the next day to resolve this dispute. (Amended Complaint, ¶11; Gray Declaration, ¶13).

Before the next day's meeting, Ms. Gray discovered that the defendant's HR Director, Paula Dinwiddie, was going to be attending. (Amended Complaint, ¶12; Gray Declaration, ¶14). Ms. Gray was concerned that she would feel intimidated. (Amended Complaint, ¶14; Gray Declaration, ¶14) Therefore, she asked the defendant's employment counsel, Scott Brash, if she could bring a co-worker to the meeting as a witness. Brash indicated that she could. (Amended Complaint, ¶12; Gray Declaration, ¶15).

However, when Dinwiddie found out about Ms. Gray's intentions, Dinwiddie told her that she could not bring the co-worker. (Amended Complaint, ¶13; Gray Declaration, ¶16). While Ms. Gray was attempting to explain to Ms. Dinwiddie that she had received approval from counsel to bring the co-worker, Dinwiddie became very angry and fired her. (Amended Complaint, ¶13; Gray Declaration, ¶16).

Ms. Gray's complaint further alleges that firing her ostensibly for seeking the assistance of a co-worker during a disciplinary meeting treated her less favorably than other employees who were not black and who did not have the ethnic characteristics of

someone from Jamaica.  (Amended Complaint, ¶14; Gray Declaration, ¶17-20).  These employees were given progressive notice of violations of the defendant's policies before being terminated.  (Amended Complaint, ¶14; Gray Declaration, ¶17-20; Ex. 2).  In contrast, the defendant fired Ms. Gray without notice and even though she had not violated any of the defendant's policies.  (Amended Complaint, ¶14; Gray Declaration, ¶17-20).

**ARGUMENT**

The standards for granting Rule 12(b) (1) and (6) motions for failure to state a claim are extremely onerous on the moving party.  In deciding a motion to dismiss under Rule 12(b)(1) and (6), the Court is bound to consider all well-pleaded facts as true, and to draw all reasonable inferences in favor of the non-movant. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).   "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

Further, in discrimination cases, even if the complaint fails to plead specific facts setting forth a prima facie case, dismissal is still not appropriate.  *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-12 (2002).  In responding to a motion to dismiss, a plaintiff only needs to set forth facts which, if believed, would establish her case. *Id*. and *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624-25 (D.C.Cir.1997).

Moreover, because the defendant has sought to add facts and issue outside of the allegations in the complaint, and thus also moved for summary judgment, the standards under Rule 56 of the Federal Rules also apply to the Court's consideration of this motion. Summary judgment may not be granted unless the moving party has demonstrated that

there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Tao v. Freh*, 27 F.3d 635, 638 (D.C. Cir. 1994); Fed R. Civ. P. 56(c). In examining the record, the reviewing court must view all inferences in a light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), and "assume the truth of the non-movant's evidence." *Bayer v. U.S. Dept. of Treasury*, 956 F.2d 330, 333 (D.C. Cir. 1992); *Langdon v. Dept. of Health and Human Services*, 959 F.3d 1053, 1058 (D.C. Cir. 1992).

The Supreme Court has specified the standards for reviewing employer's motions for summary judgment in employment discrimination cases. It has held that that the court should review all of the evidence in the record. *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 140 (2000). In doing so, however, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Id.* at 143 (internal quotation marks omitted ). "Thus, although the court should review the record as a whole, *it must disregard all evidence favorable to the moving party that the jury is not required to believe*." *Id.* (emphasis supplied). "That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Id.* (internal quotation marks omitted). The Court may not grant the motion unless there is "abundant and uncontroverted independent evidence that no discrimination occurred." *Id.* at 148.

**Ms. Gray's Complaint Clearly Meets The Standards For Proving a Prima Facie Case of Race Discrimination**

The standards for proving discrimination in a termination case are the same whether the case is brought under Title VII or under 42 U.S.C. §1981.  *Murray v. Gilmore,* 406 F.3d 708, 713 (D.C. Cir. 2005).  In the absence of direct evidence, disparate treatment discrimination claims are analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Id.*

In such cases, the plaintiff first has the burden of proving a prima facie case of discrimination.  This burden is not difficult. To meet it, a plaintiff need only show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action and (3) the adverse action gives rise to an inference of discrimination. *George v. Leavitt,* 407 F.3d 405, 412 (D.C.Cir.2005); *Stella v. Mineta,* 284 F.3d 135, 145 (D.C.Cir.2002) (1981) (citation and internal quotation marks omitted).

The defendant's motion wrongly claims that the allegations in Ms. Gray's complaint do not set forth a prima facie case of race and ancestry discrimination. It also claims that Ms. Gray has pled a claim of national origin rather than ancestry or ethnic characteristics discrimination under §1981.  It seeks a dismissal on both grounds. The Court must reject these contentions.

The defendant cannot legitimately dispute that Ms. Gray's complaint met the first two prima facie elements in that she was black, and hence was a member of a racially protected class, and that she suffered an adverse employment action, that is a termination. (Amended Complaint, ¶6, 14).   Instead, the defendant claims that, to establish a prima facie case of race discrimination, Ms. Gray must plead and prove that the defendant replaced her with a white person and that Ms. Gray has failed on both accounts.

In support of its argument, the defendant submitted an affidavit from the decision-maker, Paula Dinwiddie, that claimed that the defendant replaced Ms. Gray with two black people.  According to the defendant, Ms. Gray's complaint therefore fails.

The Court must reject the defendant's argument because the defendant's statement of the law is just plain wrong. In *Mastro v. Potomac Electric Power Company*, 447 F.3d 843 at 850-1 (D.C. Cir. 2006), the D.C. Circuit recently held that the race of a plaintiff's replacement is not one of the elements of proof of a prima facie case.  The Court held:

> 'We have made clear that a plaintiff   makes out a prima facie case of disparate-treatment discrimination by establishing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of  discrimination.' *George v. Leavitt,* 407 F.3d 405, 412 (D.C.Cir.2005) (quoting  *Stella v. Mineta,* 284 F.3d 135, 145 (D.C.Cir.2002) (quoting *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999)) (internal quotation marks omitted). A plaintiff may satisfy the third prong of this test by 'demonstrating that she was treated differently from similarly situated employees who are not part of the protected class,' *id.* (citing *Holbrook v. Reno,* 196 F.3d 255, 261 (D.C.Cir.1999)), or, in the specific context of a discharge claim, showing that she was not terminated for 'the two ... common legitimate reasons for discharge: performance below the employer's legitimate expectations or the elimination of the plaintiff's position altogether,' *id. Contrary to the district court's view, we have expressly rejected as immaterial a requirement that the plaintiff be replaced by an individual outside her protected class. Id.* at 412-13; *Stella,* 284 F.3d at 146. The plaintiff need only show that the position continues to exist and was filled-sufficient proof that the position was not simply eliminated.

*Id.* at 850-1 (emphasis added).  See also, *Czekalski v. Peters,* 475 F.3d 360 at 363-364 (D.C. Cir. 2007).

As the D.C. Circuit also held in *George v. Leavitt*, 407 F.3d at 412, Ms. Gray may satisfy this third element of a prima facie case by demonstrating: (a) that she was treated differently from similarly situated employees or (b) that her performance was not, in fact, below the defendant's legitimate expectations. Moreover, as the *Mastro* case also held:

> The conduct alleged by a Title VII plaintiff to be tainted by the employer's discrimination cannot serve as evidence that the employee was performing below the employer's legitimate expectations. Otherwise, any employer could routinely evade Title VII's protections by accusing an employee of misconduct, firing him, and claiming that the employee failed to demonstrate a prima facie case of discriminatory termination because his alleged misconduct constituted performance below legitimate expectations. Appellees' argument to this end is therefore unavailing.

*Mastro v. Potomac Electric Power Company*, 447 F.3d at 853-4.

Applying these standards and it is clear that, on its face, the amended complaint has set forth facts that give rise to an inference of discrimination.  Just prior to her firing, Ms. Gray had not exhibited any serious deficiencies in either her performance or conduct. At worst, she had received a written warning. Moreover, at the time that Dinwiddie precipitously fired Ms. Gray, she and the defendant were in discussions to resolve any problems that had allegedly caused the warning. (Amended Complaint ¶12-14; Gray Declaration, ¶6; 8-14).

According to the D. C. Circuit, allegations similar to Ms. Gray's are all that are necessary to present a prima facie case.  *Mastro v. Potomac Electric Power Company*, 447 F.3d at 853-4; *George v. Leavitt*, 407 F.3d at 412.   Thus, Ms. Gray's complaint clearly has set forth a prima facie case of discrimination.

Although showing she has met the defendant's legitimate expectations is sufficient in and of itself to demonstrate a prima facie case of discrimination in termination, Ms. Gray may also rely on the amended complaint's other allegations that she was treated less favorably than similarly situated employees.  Because in a motion to dismiss the Court must treat these well-pleaded allegations as true, Ms. Gray does not have to define with any more specificity the nature of these allegations.  *Swierkiewicz v. Sorema N.A.,* 534 U.S. at 511-12. Her complaint certainly does not have to identify by

name these similarly situated employees. These names may be fleshed out more particularly in the discovery process. *Id*. at 515.

In this case, this should be fairly easy. Ms. Gray was fired for following the advice of defendant' s counsel allowing her to bring a witness to an interview with her boss and Ms. Dinwiddie in which discipline was to be discussed. (Amended Complaint, ¶12). She was not accorded any progressive discipline prior to the firing. (Amended Complaint, ¶12; Gray Declaration, ¶20).

Thus a valid comparative employee would be any other whites or non-Jamaicans who the defendant allowed to bring a witness to a disciplinary interview or who otherwise followed counsel's advice or who received more progressive discipline than Ms. Gray received prior to her firing. See, *George v. Leavitt*, 407 F.3d at 414-5. Because it is unlikely that counsel would have granted Ms. Gray's request unless the defendant had a practice of allowing co-employee witnesses to attend at disciplinary interviews and because Ms. Gray has knowledge that the defendant followed progressive discipline with other employees, at this stage of the proceeding it is more probable than not that Ms. Gray will develop evidence of similarly situated employees who were treated differently than she was. This will provide her not only with more evidence to support her prima facie case but also with evidence to prove to a jury that the reasons for her firing were pretexts for discrimination. *George v. Leavitt* at 414-5 (jury is entitled to decide whether defendant's different treatment of other employees is evidence of discrimination).

**Ms. Gray's Complaint Clearly Meets The Standards For Proving a Prima Facie Case of Discrimination Because of Her Jamaican Ancestry**

The Court must also reject the defendant's other claims that Ms. Gray has failed to present a prima facie case of discrimination because of her Jamaican ancestry. First, the

defendant has mischaracterized Ms. Gray's allegations as national origin discrimination which is not actionable under §1981. To the extent that Ms. Gray's initial complaint could be read as one based on national origin, she has now filed an amendment which clarifies that the basis for the discrimination against was her ancestry, that is that she had the ethnic characteristics of someone who was born in Jamaica. (Amended Complaint, ¶6, 14 and 16).

Discrimination based on ancestry and ethnic characteristics is clearly prohibited under §1981. As the Supreme Court held in *Saint Francis Coll. v. Al-Khazraji,* 481 U.S. 604, 613 (1987) the section was "intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." See also, *Hyman v. First Union Corp*., 980 F.Supp. 46, 52 (D.D.C. 1997)(distinguishing ancestry claims for those based solely on national origin). Because Ms. Gray has not alleged national origin discrimination, the defendant has no grounds to dismiss the complaint on that basis.

Having set forth valid allegations of discrimination based on ancestry and ethnic characteristics, for reasons similar to those outlined above with regard to her race discrimination claims, Ms. Gray also has alleged a prima facie case of discrimination on that basis. She is an individual with the ethnic characteristics of someone who was born in Jamaica who the defendant fired even though she was otherwise meeting its legitimate expectations. The fact that the defendant has admitted that it replaced Ms. Gray with individuals who were not ethnic Jamaicans only further enhances her prima facie case even under the defendant's overly restrictive standards.

**Having Alleged A Strong Prima Facie Case of Race and Ancestry Discrimination, A Reasonable Fact Finder Could Also Conclude that the Defendant's Reasons for Firing Ms. Gray Were Pretexts for Discrimination**

If a plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.  Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination or that discriminatory reasons more likely than not motivated the defendant. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981); *Czekalski v. Peters,* 475 F.3d 360 at 363-364.

As the Supreme Court has often held, once the plaintiff has established a prima facie case, the "central focus of the inquiry" in a discrimination case is whether the employer is treating "'some people less favorably than others'" because they are a member of a protected class. *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)); *see also Burdine,* 450 U.S. at 253 (noting that the "ultimate burden," which "remains at all times with the plaintiff," is to persuade the trier of fact "that the defendant intentionally discriminated against the plaintiff").

Because the allegations in Ms. Gray's amended complaint established a prima facie case, the only real issue which the Court must decide is whether the defendant has proven that Ms. Gray's facts and inferences, when viewed in the light most favorable to her, preclude a reasonable jury from finding that the reasons for her termination were pretexts for discrimination or that the firing was more likely than not motivated by

discrimination.  To prove that a jury could reasonably infer discrimination the Court must

consider the totality of Ms. Gray's case. This includes:

> '(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack
> the employer's proffered explanation for its actions; and (3) any further evidence
> of discrimination that may be available to the plaintiff (such as independent
> evidence of discriminatory statements or attitudes on the part of the employer).'
> *Waterhouse v. District of Columbia,* 298 F.3d 989, 992-93 (D.C.Cir.2002)
> (quoting *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1289 (D.C.Cir.1998) (en banc))
> (internal quotation marks omitted).

*Salazar v. Washington Metropolitan Transit Authority,* 401 F.3d 504 at 508 (D.C. Cir.

2005).  See also, *Czekalski v. Peters*, at 363-364.  If Ms. Gray submits evidence from any

of the categories listed above, summary judgment must be denied.  *Aka v. Wash. Hosp.*

*Ctr.,* 156 F.3d 1284 at 1289(D.C.Cir.1998) (a prima facie case, plus evidence from either

or both of the other two categories, is normally sufficient grounds to deny summary

judgment).

 If taken as true and construed in a light favorable to Ms. Gray, the allegations in

the amended complaint here are more than sufficient to meet these standards.  In addition

to her prima facie case, that is that she is black and of Jamaican ancestry and the fact that

she was meeting the defendant's expectations, the defendant fired Ms. Gray without any

warning and on grounds that had nothing to do with her work performance.  The firing

occurred solely because she tried to follow the instructions she received from the

defendant's counsel as to how she was to conduct herself at a disciplinary interview.

(Amended Complaint, ¶12-14; Gray Declaration, ¶14-16).

 Because Ms. Gray was acting on the instructions of the defendant's counsel in

requesting a witness at the interview, the defendant cannot possibly justify the firing on

business reasons that were legitimate.  Following the instructions of defendant's counsel

was inherently legitimate conduct on Ms. Gray's part. *Johnson v. Lehman,* 679 F.2d 918, 922 (D.C.Cir.1982)(failure to follow employer rules can be evidence of pretext supporting a discrimination finding).  Even though Ms. Dinwiddie may have disagreed with counsel's instructions, the defendant cannot reasonably contend that this disagreement provided her with any basis to fire Ms. Gray.

It is almost always the case that a fact finder may use a defendant's excessively subjective and irrational reasons for its actions as evidence of discriminatory pretext. *Aka v. Wash. Hosp. Ctr.,* 156 F.3d at 1298. "A plaintiff may prove pretext by showing that the employer's stated reason for the adverse employment action has no basis in fact. *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1052 (8th Cir.2006). '[I]mplausible explanations and false or shifting reasons support a finding of illegal motivation.' *Hall v. Nat'l Labor Relations Bd.,* 941 F.2d 684, 688 (8th Cir.1991)." *E.E.O.C. v. Wal-Mart Stores, Inc.,*  477 F.3d 561, 570 (8th Cir. 2007).

The fact that Ms. Diniwddie is a white American herself and replaced Ms. Gray with non-Jamaicans only serves to enhance Ms. Gray's proof that Ms. Dinwiddie's had animus toward her not only because of Ms. Gray's race but also because of  the ethnic characteristics associated with her Jamaican ancestry.   With this strong proof of discrimination, summary judgment for the defendant is in no way appropriate.  The defendant has simply not proven that there is "abundant and uncontroverted independent evidence that no discrimination occurred."  *Reeves v. Sanderson Plumbing*, 530 U.S. at 148.

**Should The Court Should Find Comparator Or Additional Evidence Important For Deciding This Motion, It Should Provide The Plaintiff The Opportunity To Conduct Discovery**

If a defendant files a motion to dismiss under Rule 12(b)(6) but refers to evidence outside the pleadings, thus converting the motion to one for summary judgment, the Court must allow all parties both a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56" and a chance "to pursue reasonable discovery." *First Chicago Int'l v. United Exchange Co., Ltd.,* 836 F.2d 1375, 1380 (D.C.Cir.1988). Further, under Rule 56(f) of the Federal Rules, the courts are also provided with discretion to postpone motions for summary judgment to allow a party additional time to conduct discovery on any disputed issue, including developing evidence of comparative treatment of similarly situated persons. *Stella v. Mineta*, 284 F.3d at 147.

In this case, the defendant filed its motion under Rule 12(b)(6) and/or for summary judgment before Ms. Gray had the opportunity to file any discovery. The discovery that Ms. Gray intends to seek in this case includes the following:  information describing all the reasons for any defenses raised, all information regarding her alleged replacements, all information regarding the defendant's disciplinary policies, including its conduct of disciplinary interviews, all evidence, including races and ethnic backgrounds of persons who have received discipline, up to and including terminations or all evidence, including races and ethnic backgrounds of persons who have received disciplinary interviews and whether they were allowed witnesses, evidence of other racial or ethnic discrimination cases involving the defendant and other, similar information.  This discovery could well enhance her already strong evidence of discrimination.

15

Therefore, if the Court has any question that the allegations in the amended complaint or evidence to support those allegations are at present deficient in any respect, it should not grant the motion. Instead it should allow Ms. Gray to conduct discovery and file a supplemental opposition with the Court at the completion of this discovery.

**CONCLUSION**

For all the foregoing reasons, the Court should deny the defendant's motion to dismiss or, in the alternative, for summary judgment.

Respectfully submitted,

FOR THE PLAINTIFF

/s/James L. Kestell
James L. Kestell  DC #955310
KESTELL & ASSOCIATES
209 Midvale Street
Falls Church, VA 22046
(202) 237-2912
(202) 237-4321
Email jlkestell@cox.net

/s/ Jonathan L. Gould
Jonathan L. Gould
DC Bar #491052
Kestell and Associates
1012 14th Street, NW, Suite 630
Washington, DC 20005
Tel. 202-347-3889
Fax 202-347-4482
Email: jgould@igc.org

Attorneys for the Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | | |
|---|---|---|
| **Zane Gray** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | |
| **Universal Service Administrative Company** | : | |
| | : | **1:07CV00996 (RBW)** |
| | : | |
| **Defendant.** | : | **September 19, 2007** |
| | : | |

_____

**<u>ORDER</u>**

     The defendant's motion to dismiss or, in the alternative, for summary judgment

and the plaintiff's opposition thereto having been presented to the Court it is hereby:

     ORDERED that defendant's motion is DENIED.


                           _____
                           UNITED STATES DISTRICT JUDGE

cc:James L. Kestell
Jonathan Gould
Kestell & Associates
1012 14th Street,
N.W., Suite 630
Washington, D.C. 20005

Darlene H. Smith
Mary E. Brown
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
701 Pennsylvania Avenue, N.W.
Washington, D.C., 20004-2608

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Zane Gray | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | |
| Universal Service Administrative Company | : | |
| | : | 1:07CV00996 (RBW) |
| | : | |
| Defendant. | : | September 19, 2007 |
| | : | |

## DECLARATION OF ZANE GRAY

I, Zane Gray of Adelphi Maryland do hereby affirm, under the penalties of perjury as follows:

1. I am over eighteen years of age and I understand the meaning of an oath.

2. I am a black female who was born and raised in Jamaica. I have retained the ethnic characteristics of someone who is from Jamaica.

3. I have a BS degree in Accounting from the University of Maryland (1989).

4. The defendant, Universal Service Administrative Company, hired me in June 2004 as a Senior Level Accountant.

5. I was hired and supervised by James Rodda, a Caucasian male.

6. I successfully completed my probationary period and received a favorable performance evaluation in January 2005 and was given a pay increase.

7. After June 2005, I reported to Mike Wamganz (Caucasian male), who held the position of

1

Accounting Manager.

8. Mr. Wamganz was out sick during much of September 2005, and although the accounting staff did what they could to cover for his absence, the accounting work was behind for the department.

9. One Friday in October, I stayed late to complete reconciliation of a financial statement that was overdue to be filed through no fault of mine. Although my normal working time was till 6 pm, I finished the financial statement at 8:30, informed Mr. Wamganz that it was ready for him to review, and then went home for the evening.

10. Later that same evening, Mr. Wamganz sent me an email expressed his annoyance that I left work for the evening without getting his express approval. I did not receive this email until Monday morning when I returned to work. I responded that I needed to get home because of how late it was and that I had two young children waiting for me at home.

11. On Thursday of that same week, Mr. Wamganz scheduled a meeting with me and the Human Resource Manager, Irena Munoz (Russian born female). Mr. Wamganz gave me a written warning for allegedly leaving work early on several occasions.

12. I explained that I had left early on only two days and that both times I needed to pick up my children from day care.

13. The meeting ended with Mr. Wamganz asserting that we would meet again the next day to resolve this dispute.

14. Before the next day's meeting, I discovered that the defendant's HR Director, Paula Dinwiddie, was going to be attending. I was concerned that I would feel intimidated if

2

Ms. Diniwiddie attended.

15. Therefore, I asked the defendant's employment counsel, Scott Brash, if I could bring a co-worker to the meeting as a witness. Brash indicated that I could.

16. However, when Dinwiddie found out about my intentions, Dinwiddie told me that I could not bring the co-worker. While I was attempting to explain to Ms. Dinwiddie that I had received approval from counsel to bring the co-worker, Dinwiddie became very angry and fired me.

17. Based on the fact that Brash allowed me to bring a witness to the meeting, it was clear to me that the defendant had a practice of allowing its employees to have co-employees accompany them to disciplinary meetings.

18. Since that is the case, I have substantial grounds to believe that other employees who were not black or of Jamaican ancestry were allowed to have witnesses at disciplinary meetings and were not fired for making such a request.

19. Also attached hereto as Exhibit 2 is a copy of pp. 11-12 of the defendant's personnel policies. These policies indicate that, before firing employees, the defendant had a practice of following progressive discipline and a practice of allowing employees an opportunity to comment on the discipline before it was issued. These policies should have applied to all employees including white employees or employees who did not have Jamaican ethnic characteristics.

20. The defendant did not follow that policy in firing me but did so with other white employees or employees who did not have Jamaican ethnic characteristics.

THE DECLARANT

_____
Zane Gray

4

.

.

# EXHIBIT 2

.

.

UNIVERSAL SERVICE ADMINISTRATIVE COMPANY

# Employee Handbook

Universal Service Administrative Company

583 D'Onofrio Drive, Suite 201
Madison, Wisconsin 53719-2096
Telephone 608.827.8872 • Fax 608.827.8893

2120 L Street N.W., Suite 600
Washington, D.C. 20037
Telephone 202.776.0200 • Fax 202.776.0080

Home Page: http://www.universalservice.org

UNIVERSAL SERVICE ADMINISTRATIVE COMPANY

2.  If the harassment continues OR if you cannot confront the harasser without some perceived risk to your employment or yourself, discuss the harassing behavior with the Director of Human Resources.

3.  Keep a factual record of the harassing behavior, including any attempts you made to get the perpetrator to stop. This shall include a description of the conduct—what was said or done, how you responded, and the names of any witnesses.

Employees have the right to file a complaint without fear of retaliation. Information regarding the complaint, complainant, and all other involved parties will remain confidential. However, to allow for the investigation and conciliation to occur, employees who file a complaint may need to authorize the release of pertinent names and issues to appropriate parties.

All employees of USAC may use the complaint process, and each will receive an objective investigation of his or her complaint. See the "Grievance Procedure"" section of this handbook for further information. An employee, in order to invoke this process, is not required to discuss the complaint with his or her supervisor.

## Internal Investigations and Searches

From time to time, the Company may conduct internal investigations pertaining to security, auditing or work-related matters. Employees are required to cooperate fully with and assist in these investigations if requested to do so.

Whenever necessary, in the Company's discretion, work areas (i.e., desks, file cabinets, etc.) and personal belongings (i.e., brief cases, handbags, etc.) may be subject to a search without notice. Employees are required to cooperate.

The Company will generally try to obtain an employee's consent before conducting a search of work areas or personal belongings, but may not always be able to do so.

## Progressive Disciplinary Action Policy

Disciplinary action may be taken as a result of a violation of USAC's Policies, Work Rules, Code of Ethics, disclosure of confidential information, or as the company sees fit while an employee is employed by USAC. Disciplinary action can also be utilized to notify and document nonperformance of job duties and responsibilities.

Depending on the seriousness of the offense and the number of infractions, penalties may range from a verbal or written reprimand to immediate dismissal. Except for serious or repeated offenses, the purpose of disciplinary action is to correct conduct that is regarded as detrimental to USAC, as well as the employee.

Employees must be notified why and how they are being disciplined, and they must be afforded an opportunity to comment on the decision of the immediate supervisor to a member of senior management or the Director of Human Resources of USAC. The employee also has the opportunity to follow the "Grievance Procedure," which is outlined in Chapter 9. It must be remembered that the employment relationship is based on the mutual consent of the employee and the company. Accordingly, at any time, either the employee or the company can terminate the

---

Revised 01/,

UNIVERSAL SERVICE ADMINISTRATIVE COMPANY

employment relationship at will, with or without cause or advance notice. There is no implied promise that employment will continue for a set period or that employment will be terminated only under particular circumstances. No one other than the CEO has the authority to make representations, either expressly or implied that are inconsistent with this policy. The CEO may amend the policy in a written statement, at any time. This policy supercedes all written and oral representations to the contrary.

While any employee has an active disciplinary case open in their personnel file, no interoffice transfers/telecommuting and/or flextime arrangements may be made or continued. All disciplinary actions that have been documented in a written format remain active for six months past the last discussion. After that six-month timeframe, all disciplinary documentations will remain in the employees' personnel file for historical purposes.

## *Voicemail Usage Policy*

USAC provides a voicemail system to its employees to facilitate business communications internally and externally. Communications conducted through USAC's voicemail system are valuable assets of USAC and are considered USAC's work product. Work-related voicemail messages shall be memorialized in paper or electronic form and retained in accordance with USAC's document retention policy and schedule. USAC may establish limits on the number of stored messages and the length of time of storage. These limits will be clearly communicated to employees. From time to time, the voicemail system may need to be shut down for maintenance, upgrades, or other purposes. Employees will be notified in advance of a shutdown. When this occurs, all saved and unopened messages may be deleted. Employees also need to be aware that if the voicemail system crashes, all saved and unopened messages might be lost. USAC does reserve the right to retrieve and listen to any message composed, sent, or received. Once a voicemail message is deleted, it may not be retrieved. If an employee forgets his or her password, the helpdesk can re-set it. Because there is no guarantee of privacy when using cellular or cordless telephones to access voicemail messages, employees shall use appropriate discretion when retrieving voicemail messages from cordless or cellular telephones.

Voicemail may not be used to solicit, harass, or otherwise offend anyone or for any unlawful purposes including any behavior in violation of USAC's Policies on Equal Opportunity and Harassment.

Personal phone calls during working hours distract employees from their job responsibilities and may be disruptive to coworkers. Employees should therefore limit the placing or receiving of personal calls during working hours. This policy applies to the use of company phone equipment as well as company and personal cellular phones. Employees are expected to inform friends and family members of this policy and will be held accountable for their actions under the company's disciplinary procedure. Employees contacted by creditors or collection agencies should immediately inform the caller of this policy and end the call. They should then follow up with the agency in writing advising them not to call them at work. Creditors failing to honor such a request can be reported to the Federal Trade Commission at www.ftc.gov.

If the employee does make any type of personal long distance phone call, the Office & Facility Manager in Washington or the Executive Assistant to the CEO in Madison must be informed of the date, locations called, and number called for any personal long distance telephone calls or faxes